IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**EZRA L. HALSTEAD, JR.,**

    **Plaintiff,**

v.                                      **Case No.: 2:13-cv-16651**

**CAROLYN W. COLVIN,**
**Acting Commissioner of the**
**Social Security Administration,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, who is proceeding *pro se,* has not filed a motion for remand or a brief in support of the complaint as required by Local Rule of Civil Procedure 9.4. However, he did submit a copy of a portion of a disability finding issued by the United States Department of Veterans Affairs and a letter from a Veterans Affairs

nurse practitioner setting forth his medical diagnoses, which Claimant accompanied with a handwritten note that reads: "If I, Ezra Halstead do not qualify for disability S.S. with the evidence presented, there is something wrong with our system." (ECF No. 9). In response to that submission, the Commissioner filed a Brief in Support of Defendant's Decision, asking the Court to affirm the finding of nondisability and pointing out that Plaintiff failed to identify any specific errors in the Commissioner's decision. (ECF No. 10).

The undersigned has thoroughly considered the evidence and the applicable law. For the following reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **REVERSED;** this matter be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g); and this action be **DISMISSED, with prejudice,** and removed from the docket of the Court.

I. Procedural History

On October 13, 2010, Plaintiff, Ezra L. Halstead, Jr. ("Claimant"), filed an application for DIB, alleging a disability onset date of April 1, 2009, which he subsequently amended to March 17, 2009, due to depression, post-traumatic stress disorder ("PTSD"), thyroid problems, and chest pains. (Tr. at 119, 127, 155). His application was denied initially and upon reconsideration. (Tr. at 71, 76). Claimant requested and received a hearing before an Administrative Law Judge ("ALJ"), who determined on May 16, 2012 that Claimant was not disabled under the Social Security Act. (Tr. at 9-19). The ALJ's decision became the final decision of the Commissioner on June 19, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1–3). Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner filed an Answer and

a Transcript of the Administrative Proceedings. (ECF Nos. 7, 8). Claimant filed the additional paperwork described above, and Defendant filed a Brief in Support of Defendant's Decision. (ECF Nos. 9, 10). Consequently, the matter is ready for resolution.

## II.     Claimant's Background

Claimant was 54 years old at the time he filed the instant application for benefits. (Tr. at 119, 127). He is a high school graduate and communicates in English. (Tr. at 32, 154). Claimant has prior relevant work experience as a home improvement worker; window installation worker; scoop operator; and belt picker. (Tr. at 16).

## III.    Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the

impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the next step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger,* 538 F.2d. 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at every level in the administrative review," including the review performed by the ALJ. 20 C.F.R. § 404.1520a. First, the ALJ evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a

4

medically determinable mental impairment. *Id.* § 404.1520a(b). If such impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning, and concentration, persistence or pace) and "none" in the fourth (episodes of decompensation) will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual function. *Id.* § 404.1520a(d)(3).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for disability insurance benefits through December 31, 2014. (Tr. at 11, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since March 17, 2009, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: "posttraumatic stress disorder, bipolar disorder, depression, anxiety disorder, NOS, and inguinal

5

hernia." (Tr. at 11, Finding No. 3). He considered Claimant's other medically determinable impairments, but decided that they were non-severe. (*Id.*).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 11-13 Finding No. 4). Accordingly, the ALJ determined Claimant's RFC, concluding that he could:

> Perform medium work as defined in 20 CFR 404.1567 (c) except he can sit approximately six hours in an eight/hour workday and stand and walk approximately six hours in an eight-hour workday. The Claimant is limited to simple, routine, and repetitive tasks, and is not able to perform at a production rate pace (i.e. assembly line work), but can perform goal oriented work (i.e. an office cleaner). Claimant could have occasional interaction with the public.

(Tr. at 13-16, Finding No. 5). At the fourth inquiry, with the assistance of a vocational expert, the ALJ found that Claimant was capable of performing his past relevant work as a belt picker. (Tr. at 16-17, Finding No. 6). Therefore, Claimant was not disabled as defined by the Social Security Act. (Tr. at 17-18, Finding No. 7).

## IV. Claimant's Challenge to the Commissioner's Decision

Although Claimant did not submit a memorandum outlining specific challenges to the Commissioner's decision, the basis of his complaint is clearly documented in the file. Claimant contests the Commissioner's finding of nondisability on the ground that it directly conflicts with a finding by the Department of Veterans Affairs that Claimant is disabled. (Tr. at 4-5, 81). On February 24, 2010, the Department of Veterans Affairs ("VA") notified Claimant that he was granted entitlement to individual unemployability benefits effective March 20, 2009 as a result of a service-connected disability. (Tr. at 236-46). The VA identified PTSD/depressive disorder as Claimant's service-connected disability and noted that

his psychiatric condition was rated as 70% disabling, which under the VA system is sufficient to render Claimant unemployable. The VA further determined that Claimant had no physical disability. Claimant was advised that his psychiatric disability was considered permanent and total, although at the same time, Claimant was provided with information on how to apply for vocational rehabilitation services through the VA. (Tr. at 242, 244-45). In light of the VA's finding of permanent and total disability, Claimant maintains that "something is just not right" with the Commissioner's subsequent denial of his DIB application. (Tr. at 203).

### V. Relevant Medical History

The undersigned has reviewed the evidence in its entirety, including all of the medical records. Given the lack of specific challenges to the ALJ's decision, an abbreviated summary of Claimant's health care treatment and evaluations follows.

#### A. Treatment Records

Records relating to Claimant's psychiatric care begin on July 12, 2007, with a consultation by A.D. Faheem, M.D. (Tr. at 305). Claimant reported to Dr. Faheem that in 1973 he enlisted in the army and remained on active, non-combat duty through 1976. Claimant denied having any psychiatric problems or treatment prior to entering the service. However, while in the army, Claimant was the victim of an assault that caused "a major change in his attitude." (*Id*). He began to display mood and behavioral problems and was ultimately diagnosed with a pathological personality disorder. In Claimant's view, his current psychological difficulties stemmed from his unresolved feelings over the trauma of the assault. (*Id.*). Claimant complained of ongoing depression, mood swings, fatigue, lack of energy, lack of desire to engage in activities, irritability, and a tendency to isolate himself. (*Id*). He

7

also described problems with low self-esteem, impulsivity, lack of concentration, and occasional intrusive thoughts about his experience in service. (Tr. at 305-06). He reported drugs use and excessive drinking for many years after the event, although he allegedly stopped abusing substances several years earlier. (*Id.*). Claimant advised Dr. Faheem that he has previously been diagnosed with "major affective illness, depression, or bipolar [too] type of disorder, and also elements of PTSD." (Tr. at 305). Dr. Faheem noted that Claimant was currently undergoing outpatient treatment with the Mental Hygiene Clinic at the VAMC, Beckley, West Virginia and had been well-adjusted since his discharge from the armed forces. (*Id.*). Claimant reported his daily activities included taking care of his personal needs; work; watching television; going to the store; and going to church approximately three times a week. (Tr. at 306). Objectively, Dr. Faheem noted Claimant was pleasant and cooperative with a proper flow of conversation. (*Id.*). He was oriented times three with no evidence of active hallucinations or delusions. Claimant's memory, recall, and judgment were intact with no evidence of any elusiveness of associations, flight of ideation, or pressured speech. (*Id.*). Dr. Faheem diagnosed Claimant with major affective illness and depression, and Claimant was given a GAF score of 55.[1] (Tr. at 306-07). Dr. Faheem felt that Claimant's primary problem was depression with recurrent mood swings. (Tr. at 307). He believed Claimant's psychiatric problems

---

[1] The Global Assessment of Functioning ("GAF") Scale is a 100-point scale that rates "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," but "do[es] not include impairment in functioning due to physical (or environmental) limitations." *Diagnostic Statistical Manual of Mental Disorders*, Americ. Psych. Assoc, 32 (4th Ed. 2002) ("DSM-IV"). On the GAF scale, a higher score indicates a less severe impairment. A score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. In the past, this tool was regularly used by mental health professionals; however, in the latest edition of the *Diagnostic and Statistical Manual of Mental Disorders*, DSM-5, the GAF scale was abandoned in part due to its "conceptual lack of clarity" and its "questionable psychometrics in routine practice." DSM-5 at p. 16.

8

were secondary to the assault he suffered while in the service, and that this experience continued to cause Claimant psychiatric problems that occasionally interfered with his social interaction and employment. (*Id.*).

Safiullah Syed, M.D. completed a mental disorder evaluation on January 17, 2008. (Tr. at 301). Claimant reported that he currently received treatment at the Mental Health Clinic, VAMC, as well as counseling with Melinda Jones. (Tr. at 302). According to Claimant, his treatment for mental health issues had been ongoing for several years and included one inpatient admission at Appalachian Hospital in 1996. (*Id.*). Through the years of treatment, Claimant had been diagnosed with depression, bipolar disorder, and anxiety disorder. (*Id.*). His current complaints included mood problems, depression, fatigue, lack of interest in activities, and a tendency toward social isolation. Claimant believed that tragedies in his personal life triggered flashbacks of his assault, leading to nightmares and restless sleep. Claimant told Dr. Syed that he had recently lost a daughter and granddaughter in a motor vehicle accident, and had also lost his second wife in 2000 from the complications of an ectopic pregnancy. (*Id.*). Claimant was remarried now and spent most of his time at home with his wife and young children. He was able to take care of his activities of daily living, such as personal care, chores, watching television, attending church, and driving. (Tr. at 303). On examination, Claimant appeared pleasant with good eye contact and interaction. (*Id.*). His behavior was normal; his thought process coherent and logical. (*Id.*). Although Claimant denied suicidal thoughts, audiovisual hallucinations, and homicidal ideations, he did express to Dr. Syed that he felt some anxiety and paranoid thoughts in the company of other people. (Tr. at 304). Dr. Syed felt that Claimant was coping with the stressful events in his life. (Tr. at 303). At the

9

conclusion of this examination, Dr. Syed diagnosed Claimant with major depression disorder and gave him a GAF score of 50-55. (Tr. at 304). Dr. Syed felt that Claimant also had some anxiety symptoms, especially in social settings and tended to ruminated about the past, exhibiting PTSD-like features of avoidance, flashbacks, and nightmares. (*Id.*). Still, Dr. Syed believed Claimant's prognosis was "fairly good," and he advised Claimant to continue with his medications and counseling. (*Id.*).

On March 14, 2008, Dr. Syed submitted an addendum evaluation for the purpose of answering specific questions related to Claimant's unemployability claim. (Tr. at 300-301). Dr. Syed reviewed Dr. Faheem's July 12, 2007 evaluation of Claimant, as well as his own January 17, 2008 evaluation report. Dr. Syed opined that Claimant was temporarily unemployable due to some recent stressors that had exacerbated his symptoms of depression. Nevertheless, Dr. Syed felt that with aggressive treatment, Claimant's moderate depression could be controlled and stabilized, so that Claimant could return to work in the future. (Tr. at 301). He added that Claimant had no major physical problems limiting his mobility.

On June 2, 2010, Claimant was seen by Richard Janney, PA-C, for mental health medication management regarding his diagnosis of bipolar disorder, depressed; anxiety disorder, NOS, and a GAF score of 45. (Tr. at 373-74). On examination, Claimant was oriented times three, reporting to Mr. Janney his mood was "pretty good." Mr. Janney noted that although Claimant complained of confusion, he was appeared "very focused today and showed adequate recent/remote memories." (Tr. at 375). Claimant was referred to a mental health counselor for supportive therapy and was prescribed Alprazolam and Lithium for mood control, Bupropion for treatment of depression, and Lamictal for treatment of bipolar

disorder. (*Id.*).

Mr. Janney performed a follow-up mental health medication management examination on December 29, 2010. Claimant's diagnosis remained the same, and he was given a GAF score of 65.[2] (Tr. at 422-23). Claimant reported to Mr. Janney that he had been building his children a snow slope and had recently taken them to Disney World. (Tr. at 423). On examination, Claimant's mood was euthymic with full affect. (Tr. at 424). He was not manic or hypomanic, his judgment and insight were fair, and his condition was felt to be stable. (*Id.*). Claimant was prescribed Alprazolam, Lithium, and Bupropion. (*Id.*). His condition remained stable at his next medication management meeting on April 29, 2011. (Tr. at 542). He was continued on Alprazolam, Lithium and Buproprion. (*Id.*).

The last mental health treatment records in evidence involve a medication management visit on August 30, 2011. (Tr. at 512). On that visit, Claimant's diagnoses were bipolar disorder and anxiety disorder, NOS. His GAF score was 70. (*Id.*). Claimant reported that he was putting up a pool at home for his four children. He had recently taken them to the fair and planned to take them to Nags Head in the Fall. Claimant's mood was euthymic with a full affect, and he was assessed as stable. (Tr. at 513).

### B. Agency Mental Impairment Assessments

Angela Register, Ph.D, completed a Psychiatric Review Technique on December 7, 2010 at the request of the SSA. (Tr. at 253-66). Dr. Register concluded that Claimant had bipolar disorder, depressed, with a history of major depressive

---

[2] A GAF of 61-70 indicates the presence of some mild symptoms, but the client is generally functioning pretty well and has some meaningful interpersonal relationships. DSM-IV at 32

disorder; although he had no symptoms of major depressive disorder at the time of the report. (Tr. at 256). Additionally, Dr. Register confirmed that Claimant had diagnoses of anxiety disorder, NOS, with a history of PTSD. Again, she documented that Claimant was asymptomatic at the time of her report. (Tr. at 258). As to Claimant's functional limitations, Dr. Register found Claimant was mildly limited in activities of daily living and moderately limited in maintaining social functioning, concentration, persistence and pace. (Tr. at 263). Dr. Register concluded there were no episodes of decompensation and no evidence to establish the presence of paragraph "C" criteria. (Tr. at 263-264). She noted that Claimant performed chores and personal care, watched TV, took out the trash, did laundry occasionally, mowed grass, raked leaves, gardens, drives, rides a four wheeler, does grocery shopping, and attends church and medical appointments. (Tr. at 265). Dr. Register opined that Claimant's symptoms were consistent with his diagnoses, but indicated that he was doing well with medications. (Tr. at 265). As a result, Dr. Register found Claimant's allegations of severity to be only partially credible, stating that his statements were not supported by the medical evidence, or his reported activities of daily living. Consequently, Dr. Register gave more weight to the objective medical evidence and the recorded activities of daily living. (*Id.*).

When asked to describe Claimant's mental functional capacity, Dr. Register stated that Claimant demonstrated "the ability to complete simple, routine two-step commands" and "would be able to maintain attention and concentration for at least 2 hours at a time as required in order to perform simple tasks sufficiently to complete an 8-hour day and a 40 hour work week." (Tr. at 269). Additionally, while Claimant's symptoms would "somewhat limit" his ability to maintain appropriate social

12

interactions with the public, Dr. Register opined that Claimant would have difficulty "only on occasion and under high stress." (*Id*). Dr. Register noted Claimant had been able to interact appropriately, as documented in the objective medical record, and should be capable of maintaining appropriate superficial social interactions with others in settings with minimal social demands. (Tr. at 269). Finally, Dr. Register opined that although Claimant's ability to adapt adequately to changes and demands of detailed tasks was limited, his symptoms were "not at a level that would limit his adapting adequately to changes & demands of simple tasks." In so finding, Dr. Register noted Claimant "was emotionally and cognitively capable of driving and travelling alone; setting goals independently; and understanding safety issues." (*Id*).

On May 19, 2011, a Case Analysis was completed by Jeff Harlow, Ph.D., on the reconsideration claim. (Tr. at 491). Dr. Harlow noted that while Claimant had no new mental illnesses or reported limitations, there were additional treatment records, which Dr. Harlow reviewed. (*Id.*). After completing his record review, Dr. Harlow opined that the December 7, 2010 Psychiatric Review Technique Form and the Mental Residual Functional Capacity Assessments were still accurate assessments of Claimant's mental residual functional capacity to work. Therefore, Dr. Harlow affirmed both assessments. (*Id.*).

## VI. <u>Scope of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson,* the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

13

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart,* 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 2001)). Instead, the Court's role is limited to insuring that the ALJ followed applicable regulations and rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock,* 483 F.2d at 775.

## VII. Discussion

At the administrative hearing, Claimant asked the question that underlies his current request for review. How can the United States Department of Veterans Affairs tell him he is permanently and totally disabled from employment as a result of his PTSD/depression, yet at the same time, the SSA can deny an application for DIB based on the same mental impairments? (Tr. at 64-66). The ALJ answered that question in the written decision as follows:

> While the Veteran's award does afford the claimant some credibility regarding his complaints, the undersigned would note the Veterans' Administration's definition of "disability" and standards to receive benefits from said agency are not identical to those contained in the Social Security Act and regulations. Therefore, qualifying for "disability" with the Veterans' Administration is not mutually exclusive with finding the claimant disabled in this regard. In fact, the claimant's work record

14

itself does not indicate impairments more limiting than assessed herein. (Tr. at 14). While this explanation makes some modicum of sense, it falls substantially short of providing Claimant with an answer that complies with the requirements set forth in the relevant social security regulations and directives, as interpreted by the Fourth Circuit Court of Appeals in *Bird v. Commissioner of Soc. Sec.,* 699 F.3d 337 (4th Cir. 2012).

In *Bird*, the Fourth Circuit discussed the role that disability decisions by other governmental agencies play in the SSA's disability determination process. Pointing to circuit precedent and social security directives, the Court stated the general rule that while these decisions are not binding on the SSA, they "cannot be ignored and must be considered" when determining a claimant's eligibility for social security disability benefits. *Id.* at 343 (citing *DeLoatche v. Heckler*, 715 F.2d 148, 150 n. 1 (4th Cir. 1983) and SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006)).[3] Similar to the instant case, the claimant in *Bird* had been awarded disability benefits through the VA, but was found not disabled by an ALJ under the Social Security Act. The district court affirmed the Commissioner's decision. On appeal, the claimant argued, in relevant part, that the ALJ had failed to afford adequate weight to the VA's disability determination. In considering the argument, the Fourth Circuit acknowledged that it

---

[3] SSR 06-03p provides *inter alia*:

> Under sections 221 and 1633 of the Act, only a State agency or the Commissioner can make a determination based on Social Security law that you are blind or disabled. Our regulations at 20 CFR 404.1527(e) and 416.927(e) make clear that the final responsibility for deciding certain issues, such as whether you are disabled, is reserved to the Commissioner (see also SSR 96-5p, "Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner"). However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies (20 CFR 404.1512(b)(5) and 416.912(b)(5)). Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.

had not previously addressed the precise weight that the SSA should give to disability ratings by the VA, and noted that sister circuits had found varying degrees of deference to be appropriate. The Court reasoned that "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability." *Id.* In addition, "[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis; both focus on analyzing a claimant's functional limitations; and both require claimants to present extensive medical documentation in support of their claims." *Id.* (citing *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir. 2002)). Consequently, the Court concluded that "because the purpose and evaluation methodology of both programs are closely related, a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Id.* Thus, the Court held:

> [I]n making a disability determination, the SSA must give substantial weight to a VA disability rating. However, because the SSA employs its own standards for evaluating a claimant's alleged disability, and because the effective date of coverage for a claimant's disability under the two programs likely will vary, an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate.

*Id.*

Here, the ALJ's decision predated the *Bird* decision by approximately six months. So, not surprisingly, the ALJ did not give substantial weight to the VA's disability rating, or provide a clear justification in the record for deviating from the presumption that the rating was entitled to substantial weight. Indeed, the ALJ did not assign any precise weight to the rating decision. Rather than analyzing the VA's decision as substantive evidence directly pertinent to the existence of disability, the

16

ALJ largely relegated the decision to ancillary evidence on the issue of Claimant's credibility. Moreover, the ALJ's stated reasons for disregarding the decision had very little to do with the validity of the particular findings set forth in the rating decision and certainly did not provide a clearly articulated and specific explanation for the deviation.

Since the *Bird* decision, many courts in this circuit have held that a finding of nondisability by the Commissioner must be reversed and remanded when the ALJ failed to give substantial weight to a relevant VA disability rating, or in the alternative, failed to explain how giving the rating less weight was clearly appropriate in light of the record. *See, e.g., Wyche v. Colvin,* No. 4:13-cv-43, 2014 WL 1903106, at *8 n. 2, *10 (E.D.Va. Apr. 30, 2014) (collecting cases); *Sheldon v. Colvin,* No. 9:13-cv-0151 DCN, 2014 WL 1364984, at *4 (D.S.C. Apr. 7, 2014); *Gross v. Commissioner of Soc. Sec.,* No. WDQ-13-1274, 2014 WL 3672878, at *4 (D.Md. July 22, 2014); *Salazar v. Colvin,* No. 1:10-cv-972, 2014 WL 486726, at *6 (M.D.N.C. Feb. 6, 2014). In many instances, remand becomes necessary for the simple reason that weighing the evidence is not the Court's function. Accordingly, the case is remanded to allow the evidence to be reweighed using the correct evidentiary standard. *Sheldon,* 2014 WL 1364984, at *4. The undersigned finds that in this case, remand is required because it is unclear whether the ALJ would have reached the same conclusion if he had applied the *Bird* standard. At a minimum, compliance with the *Bird* standard would have forced the ALJ to more closely examine the rationale of the VA rating decision, which presumably would have alerted the ALJ to the fact that his file was missing some significant records that were relied upon by the VA, and thus prompted him to collect the additional records.

17

A review of the VA's Ratings Decision and Claimant's medical chart from the VAMC reveal that the administrative record is incomplete, and the missing evidence may be important to an accurate disability determination. (Tr. at 237, 241-246). According to the VA's Rating Decision, documents relied upon in rating Claimant's psychiatric disability included examination reports from the Beckley VAMC dated January 7, 2009, July 27, 2009, and September 8, 2009. (Tr. at 237). None of these reports are contained in Claimant's social security disability file. The Ratings Decision also explicitly mentions performance documentation and correspondence from Claimant's prior employer, which were not available to the ALJ. Clearly, these records are important given the ALJ's statement that Claimant's work history was a major reason for discounting the credibility of his allegations. According to the VA's decision, Claimant's work performance reports may actually substantiate his alleged difficulties at work, rather than provide grounds to impeach his credibility. In addition, medical records from Rainelle Medical Center and VAMC treatment notes dated August 2008, December 2008, April 2009, and June 5, 2009 are absent from the social security disability file. (Tr. at 237, 241-246). Considering that these specific records formed the basis of the VA's unemployability decision, the ALJ should have collected the records and reviewed them prior to issuing his written decision. *See Wood v. Colvin,* No. 9:12-3570-MGL, 2014 WL 607707, at *4 n. 1 (D.S.C. Fe. 18, 2014). This is especially true in view of the ALJ's commitment to Claimant at the administrative hearing. After confirming that Claimant wished to proceed without representation, the ALJ stated, "As you are unrepresented, I will ensure that your due process rights are protected and **will obtain any evidence that may be needed**." (Tr. at 27) (emphasis added).

Not only is it plain that key records relied upon by the VA were not collected and reviewed by the ALJ, but it is also apparent that other parts of the VAMC chart are not included in the administrative record. For example, according to the Health Summary section of the VAMC chart, Claimant presented for outpatient psychiatric treatment on April 22, June 5, July 31, September 8, and December 23, 2009, as well as April 21, 2010, yet treatment notes for those visits are not part of the administrative record. (Tr. at 401-06). Although some of these visits occurred more than one year prior to Claimant's filing of his application for benefits, they are still relevant because they reflect treatment rendered after the alleged onset of disability and provide a longitudinal perspective of Claimant's mental health issues.

In summary, the undersigned **FINDS** that in light of the Fourth Circuit's decision in *Bird v. Commissioner of Soc. Sec., supra*, the ALJ failed to properly analyze and weigh the VA's determination that Claimant is totally and permanently disabled from employment. Furthermore, the undersigned **FINDS** that reports and records relied upon by the VA in reaching its decision, as well as other relevant medical information that may have affected the decision of the ALJ, is absent from the administrative record and should be collected.

## VIII. Recommendations for Disposition

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the United States District Court confirm and accept the findings herein and **RECOMMENDS** that the District Court **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to collect the missing records and to analyze and weigh the disability rating decision of the Department of Veterans

19

Affairs pursuant to *Bird v. Commissioner of Soc. Sec*; and **DISMISS** this action, with prejudice, from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** January 8, 2015

_____
Cheryl A. Eifert
United States Magistrate Judge